UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

COREY STATHAM, a/k/a TAMIR ALI,

    Plaintiff,

v.                                **MEMORANDUM OF LAW & ORDER**
                                        Civil File No. 13-03570 (MJD/HB)

THE CITY OF SAINT PAUL,
a municipal corporation,

    Defendant.

---

A.L. Brown, Capitol City Law Group, LLC, Counsel for Plaintiff.

Kara M. Kisch, Assistant City Attorney for the City of Saint Paul, Counsel for Defendant.

---

## I. INTRODUCTION

This matter is before the Court on the Defendant City of Saint Paul's Motion for Summary Judgment. [Docket No. 19] The Court heard oral argument on Friday, January 23, 2015.

## II. BACKGROUND

### A. Factual Background

1

1.     **The Parties**

Plaintiff Corey Statham ("Plaintiff") is a resident of Minnesota. ([Docket No. 21] First Amended Complaint ("FAC") ¶ 3.) The City of St. Paul ("the City") is a municipal corporation under Minn. Stat. § 412.211. (Id. ¶ 4.)

2.     **The Incident**

Plaintiff lived out of his 2001 Nissan Maxima ("the Nissan"). (Id. ¶ 7.) On August 30, 2013, he and two others drove the Nissan to the University Avenue Wal-Mart store in Saint Paul, Minnesota. (Id. ¶ 8.) Upon exiting the Wal-Mart parking lot, he was stopped by an off-duty Saint Paul police officer that was investigating a complaint made against him by another Wal-Mart customer. (Id. ¶¶ 11, 12.) After an exchange, Plaintiff and another passenger were arrested for obstructing the legal process and disorderly conduct. (Id. ¶ 13.)

At the time of arrest, Plaintiff's Nissan was situated in the crosswalk in front of the Walmart. The arresting officer ordered that the Nissan be towed to a Saint Paul impound lot. (Id. ¶¶ 15, 16.) Ultimately, Plaintiff was not charged with any crime and/or charges were dismissed. (Id. ¶ 18.)

On September 30, 2013, the City notified Plaintiff of his right to reclaim the vehicle via a Certified Notification Letter. ([Docket No. 22-1] Affidavit of K. Meghan Kisch ("Kisch Aff."), Ex. 2, Certified Notification Letter ("the Letter").)

2

The Letter stated that Plaintiff's Nissan had been impounded pursuant to City Legislative Code Chapters 161 (Parking During Emergencies), 162 (authorizing abatement of vehicles found to be "in violation of the ordinances of the City of Saint Paul or the laws of the State of Minnesota"), and 163 (abandoned vehicles); Minnesota Statute section 168B.04 (authorizing impounding of vehicle immediately if unauthorized vehicle is on private, nonresidential property that is properly posted, or after 24 hours if the unauthorized vehicle is on private, nonresidential property that is not posted) or "other applicable law." (Id.)

The Letter also notified Plaintiff that he could reclaim the vehicle and property under Minnesota Statutes sections 168B, 168B.07 and 168B.08, which, when read together, state that the owner of an impounded vehicle has a right to reclaim the vehicle by paying all towing and storage fees resulting from taking the vehicle into custody. (Id.) If the vehicle was not reclaimed, the Letter explained that the Nissan was "eligible for disposal" fifteen days after issuance of the notice. (Id. p. 3.) To reclaim the vehicle, Plaintiff was instructed to pay "all towing and storage charges." (Id.)

Plaintiff alleges that he made several attempts to get his car back or to

challenge the propriety of the fees. (FAC ¶ 20.) Sometime around early November, 2013, Plaintiff filed a Notice of Claim with the City. ([Docket No. 26-1] Affidavit of A.L. Brown ("Brown Aff."), Ex. B, Letter from Sandra Bodensteiner ("Notice of Claim Letter").) The City responded by letter to Plaintiff, acknowledging receipt and advising that "the best course of action would be for [Plaintiff] to pay the outstanding balance at the impound lot so that [his] vehicle is not in danger of being auctioned off." (Id.) The Notice of Claim Letter further warned that under Minnesota statutes, ownership of a vehicle reverts to the municipality if it is left at the impound lot. (Id.)

Plaintiff did not timely pay towing and storage fees totaling at least $1,779.76. (FAC ¶¶ 20-25.) The City auctioned Plaintiff's Nissan on December 20, 2013, for $650.00. (Brown Aff., Ex. A, City of Saint Paul's Answers to Pl.'s First Set of Interrogs. ("Interrog. Answer") No. 7, p. 6.)

### 3. Abatement of Towing and Storage Charges

Section 162.11 of the City's Municipal Code ("the Code") provides that the "chief of police shall have the power to abate . . . towing and storage charges and/or administrative fees." (Interrog. Answer No. 8, p. 7.)

> Towing and storage charges may be forgiven in whole or in part only when one or more of the following circumstances exist:

4

> 1. When the vehicle is towed under an administrative police tow for investigative purposes and if the vehicle belongs to the victim or another person who is not involved in the incident.
> 2. Storage charges while a vehicle is on hold.
> 3. <u>When a car belongs to a criminal suspect who later is cleared.</u>

(Interrog. Answer No. 8, p. 8, citing Section 445.09 of the Saint Paul Police Department Manual ("the Police Department policy") (emphasis added).)  All requests to abate towing and storage fees "must be brought to the attention of the commander of the unit holding the vehicle before the vehicle is released." (<u>Id.</u>)  "Only the assistant chief of the patrol operations division, the assistant chief of the major crimes, the assistant chief of support services and administration division, the chief of police, or his/her designee (impound lot manager, for example) are authorized to forgive any part of towing, administrative, and storage charges."  (<u>Id.</u>)  If the Chief of Police or his designee denies a request to abate towing and storage charges, the vehicle owner may file a claim against the City. (Interrog. Answer No. 8, p. 8.)

    **4.**    **Seizure of Property for Trial**

Section 626.04 of Minnesota State Statutes is entitled "Property; Seizure, Keeping, and Disposal."  The section provides:

> (a) When any officer seizes, with or without warrant, any property or thing, it shall be safely kept by direction of the court as long as necessary for the purpose of being produced as evidence on any

trial. <u>If the owner of the property makes a written request to the seizing officer's agency for return of the property, and the property has not been returned within 48 hours of the request, excluding Saturday, Sunday, or legal holidays, the person whose property has been seized may file a petition for the return of the property in the district court in the district in which the property was seized. The court administrator shall provide a form for use as a petition under this section.</u> A filing fee, equal to the civil motion filing fee, shall be required for filing the petition. The district court shall send a copy of the petition to the agency acting as custodian of the property with at least ten days' notice of a hearing date. <u>A hearing on the petition shall be held within 30 days of filing unless good cause is shown for an extension of time.</u>

. . .

Minn. Stat. § 626.04 (2013).

### B.     Procedural Background

Initially, Plaintiff attempted to reclaim his vehicle by filing a petition for writ of mandamus in Ramsey County District Court against "Saint Paul Impound Lot, Rapid Recovery Towing." ([Docket No. 28-1] Supplemental Affidavit of K. Meghan Kisch "Kisch Supp. Aff.," Ex. 2, Order, <u>Statham v. Saint Paul Impound Lot, Rapid Recovery Towing</u>, File No. 62-CV-13-7139 (Ramsey Cnty. Dist. Ct. Oct. 24, 2013).) Plaintiff's petition was dismissed without prejudice for lack of jurisdiction, insufficiency of service of process, and failure to state a claim. (<u>Id.</u>)

Plaintiff filed his Complaint against the City in this Court on December 18, 2013.  [Docket No. 1]  He alleged Count I: Violation of the Due Process Clause of the Fifth Amendment to the United States Constitution and Count II: Violation of the Unreasonable Seizure Clause of the Fourth Amendment of the United States Constitution.

On March 26, 2014, Plaintiff filed an Amended Complaint that added Count III: Violation of the Takings Clause of the Fifth Amendment to the United States Constitution, and removed several paragraphs relating to a request for class certification.

### III.   DISCUSSION

#### A.   Summary Judgment Standard

Summary judgment is appropriate if, viewing all facts in the light most favorable to the non-moving party, there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The party seeking summary judgment bears the burden of showing that there is no disputed issue of material fact.  Celotex, 477 U.S. at 323.  "A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case."  Amini v. City of

7

Minneapolis, 643 F.3d 1068, 1074 (8th Cir. 2011) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 252 (1986)).

### B. Section 1983 Claims

Plaintiff's Complaint alleges that the City violated the Fourth Amendment and Fifth Amendment of the United States Constitution.

#### 1. Monell Liability

"A municipality or other local government may be liable under [§ 1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." Connick v. Thompson, 131 S. Ct. 1350, 1359 (2011) (citations omitted).

> Plaintiffs who seek to impose liability on local governments under § 1983 must prove that action pursuant to official municipal policy caused their injury. Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law.

Id. (citations omitted).

> [A] municipality may be held liable for the unconstitutional acts of its officials or employees when those acts implement or execute an unconstitutional municipal policy or custom. For a municipality to be liable, a plaintiff must prove that a municipal policy or custom was the moving force [behind] the constitutional violation.

Mettler v. Whitledge, 165 F.3d 1197, 1204 (8th Cir. 1999) (citations omitted).

"[A] 'policy' is an official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters."  Id. (citation omitted).  In contrast, proof of a custom requires:

> (1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
>
> (2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and
>
> (3) Th[e] plaintiff['s] injur[y] by acts pursuant to the governmental entity's custom, i.e., [proof] that the custom was the moving force behind the constitutional violation.

Id. (citation omitted).

### 2. Count I: Due Process

The Fifth Amendment provides that "[n]o person shall be . . . deprived of life, liberty or property without due process of law."  Due process is a flexible concept, and its procedural protections will vary depending on the particular deprivation involved.  Morrissey v. Brewer, 408 U.S. 471, 481 (1972).  It requires that Plaintiff have had, at a meaningful time and in a meaningful manner, an opportunity to challenge the seizure of his property.  Mathews v. Eldridge, 424 U.S. 319, 333 (1976).

In Count I, Plaintiff alleges that the City maintains a policy "(i.e., usage, custom, and practice so persistent and widespread as to practically have the force of law) to hold a vehicle as collateral for tow/storage fees without providing the vehicle's owner any opportunity to challenge the tow or the fees." Plaintiff further claims that by requiring payment "without any form of a hearing," the City violates due process. The City argues that Minn. Stat. § 626.04 provides meaningful postdeprivation relief to Plaintiff, or, alternatively, a writ of mandamus affords Plaintiff an opportunity to challenge his tow and associated fees.

### a)   Ripeness

"Under federal law, a litigant asserting a deprivation of procedural due process must exhaust state remedies before such an allegation states a claim under § 1983." Wax n' Works v. City of St. Paul, 213 F.3d 1016, 1019 (8th Cir. 2000) (citation omitted). The parties do not dispute that Saint Paul Municipal Code § 162.11 and Saint Paul Police Department policy § 445.09 state that a vehicle owner might reclaim a towed vehicle, free of charge, if the owner is a criminal suspect who is later cleared. Further, there is no dispute that if the Chief of Police or a designee denies a request made on that basis, a vehicle owner may file a claim against the City. Plaintiff has not alleged that he availed himself

of the opportunity to petition the Chief of Police or impound lot manager for abatement of towing charges but was denied possession of his Nissan in violation of the Fifth Amendment. Nor has Plaintiff attacked the facial validity of these procedures.

Moreover, the record shows that Plaintiff filed a writ of mandamus against "Saint Paul Impound Lot and Rapid Recovery Towing," but the writ was dismissed without prejudice for having not been properly served on the City, amongst other reasons. Plaintiff does not allege that he attempted to remedy this defect by properly serving the City in a successive writ. There is no factual dispute that Plaintiff has failed to exhaust the state remedies available to him, whether by suit or by writ against the City. Thus, the Court grants summary judgment on Plaintiff's Fifth Amendment procedural due process claim.

### 3.   Count II: Unreasonable Seizure

The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." In Count II, Plaintiff alleges that, by failing to provide vehicle owners an opportunity to challenge the initial seizure of their vehicle, the City's conduct amounts to unreasonable seizure of the owners' vehicles. Plaintiff did not argue

his Fourth Amendment claim in his opposition memorandum or during oral argument.

The Court determines that Count II is more properly characterized as a due process claim. Notably, Plaintiff does not challenge the validity of his arrest, but rather the absence of a meaningful opportunity to challenge the tow and fees. The Due Process Clause—not the Fourth Amendment—guarantees prompt proceedings against property lawfully seized. Furthermore, to the extent that Plaintiff challenges the City's prolonged possession of his property without a hearing, this District has held that continued retention of a validly seized vehicle is not actionable under the Fourth Amendment. See Hopkins v. City of Bloomington, Civil No. 12-1943, 2013 WL 5406671 at *9-10 (D. Minn. Sept. 25, 2013). On the record before it, the Court is satisfied that summary judgment is proper on Plaintiff's Fourth Amendment claim.

### 4. Count III: Unlawful Taking

The Fifth Amendment prohibits the taking of private property "for public use, without just compensation." Plaintiff alleges that by selling the Nissan without providing an opportunity to challenge the tow, the City's acts constituted a taking of his property without just compensation.

### a) Ripeness

"[I]f a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation."  Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City, 473 U.S. 172, 195 (1985).  Under Minnesota law, property owners may seek redress for alleged takings by filing a writ of mandamus to compel inverse condemnation proceedings.  See Rockler v. Minneapolis Cmty. Dev. Agency, 866 F. Supp. 415, 417 (D. Minn. 1994); Wilson v. Ramacher, 352 N.W.2d 389 (Minn. 1984); Alevizos v. Metro. Airports Comm'n, 317 N.W.2d 352 (Minn. 1982)).  "Until the Minnesota courts have ruled that an inverse condemnation action may not be brought or denies damages in such an action, [a plaintiff's] claim of taking without just compensation is not ripe for decision by a federal court."  Littlefield v. City of Afton, 785 F.2d 596, 609 (8th Cir. 1986) (citation omitted), overruled in part on other grounds by Chesterfield Dev. Corp. v. City of Chesterfield, 963 F.2d 1102, 1104 n.2 (8th Cir. 1992).

As noted above, Plaintiff filed a petition for writ of mandamus in Ramsey County District Court that was dismissed without prejudice for lack of jurisdiction, insufficiency of service of process, and failure to state a claim.

Plaintiff has not alleged that he refiled his writ of mandamus after having properly served the City of Saint Paul.  Until a Minnesota state court denies Plaintiff's writ of mandamus for an inverse condemnation action, or denies damages in such an action, Plaintiff's unlawful takings claim is not ripe for review.

Thus, the Court grants summary judgment on Plaintiff's Fifth Amendment takings claim.

Accordingly, based upon the files, records, and proceedings herein**, IT IS HEREBY ORDERED**:

Defendant City of Saint Paul's Motion for Summary Judgment [Docket No. 19] is **GRANTED.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  March 30, 2015        s/ Michael J. Davis
                              Michael J. Davis
                              Chief Judge
                              United States District Court